**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kenneth William Lemberg, | No. CV-12-01704-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Carolyn Colvin, Acting Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Kenneth Lemberg asks the Court to vacate the Social Security Administration's partial denial of his application for disability benefits.  Doc. 13.  The motion is fully briefed.  Docs. 16, 20.  For the reasons that follow, the Court will grant the motion, vacate the Commissioner's disability determination, and remand for further proceedings.

**I.     Background.**

Plaintiff applied for disability insurance benefits on June 2, 2004, alleging disability due to work-related injuries beginning on January 29, 2002.  Tr. at 17.  The Commissioner denied the application, and Plaintiff requested a hearing.  *Id.*  After initial and supplemental hearings before Administrative Law Judge ("ALJ") Ronald S. Robins on June 27, 2006 and November 30, 2006, the ALJ determined that Plaintiff qualified for a period of disability from January 29, 2002 through November 25, 2003, but that his impairments thereafter did not prevent him from other work.  Tr. at 27.  Plaintiff sought judicial review, and the Court vacated the ALJ's determination due to legal error and

1    remanded for the Commissioner to reassess Plaintiff's medical improvement and residual
2    functional capacity.  *See Lemberg v. Astrue*, No. 2:08-cv-01079-FJM (March 12, 2010,
3    Doc. 20).   After holding an additional hearing on April 4, 2011, ALJ Joan G. Knight
4    reaffirmed that Plaintiff was disabled from January 29, 2002, through November 25,
5    2003, but was not disabled from that time through March 31, 2009, the date he was last
6    insured.   Tr. at 597.[1]   Plaintiff argues that the finding that he was not disabled after
7    November 25, 2003, is once again legal error because the ALJ (1) failed properly to
8    evaluate the issue of medical improvement, (2) failed properly to weigh treating source
9    opinion evidence, (3) failed properly to consider reported symptoms, and (4) failed
10   properly to consider third-party reporting.  Doc. 13 at 12-24.

11   **II.    Standard of Review.**

12        The Commissioner's decision to deny benefits will be vacated "only if it is not
13   supported by substantial evidence or is based on legal error."  *Robbins v. Soc. Sec.*
14   *Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).  "'Substantial evidence' means more than a
15   mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable
16   mind might accept as adequate to support a conclusion."  *Id.*  In determining whether the
17   decision is supported by substantial evidence, the Court must consider the record as a
18   whole, weighing both the evidence that supports the decision and the evidence that
19   detracts from it.  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).  If sufficient
20   evidence supports the Commissioner's determination, the Court cannot substitute its own
21   determination.  *See Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990).

22   **III.   Analysis.**

23        The ALJ limited her review on remand to the question of whether Plaintiff was
24   under a disability from November 26, 2003, through March 31, 2009.  Tr. at 585.  The

---

26        [1] Plaintiff filed an additional application for benefits on June 21, 2007 which was
27   denied at the initial and reconsideration levels and then consolidated with the remanded
     order for purposes of ALJ review.  Tr. at 584; 1570-71.  The record before the Court thus
28   pertains to both the remand of the Commissioner's partial denial of Plaintiff's initial
     application and the denial of his subsequent application for benefits for the period from
     November 26, 2003 through the date he was last insured of March 31, 2009.  *See id.*

Court previously found that the ALJ erred in finding that Plaintiff's period of disability ended on November 25, 2003, due to a decrease in the medical severity of his impairments.   No. 2:08-cv-01079-FJM, Doc. 20 at 2-3.[2]   The Court reasoned that although Plaintiff's examining physician, Dr. Wood, opined on October 29, 2003 that the severity of Plaintiff's shoulder and neck pain was slight to moderate following surgery, the ALJ failed to resolve the discrepancy between that opinion and the opinion of Plaintiff's treating physician, Dr. Porter, on October 7, 2003, detailing Plaintiff's accounts of constant and severe pain.   *Id.*   The Court also found that the ALJ had failed properly to consider the physical limitations in Dr. Porter's reports when assessing Plaintiff's RFC, and this assessment was plainly inconsistent with Dr. Porter's August 2004 opinion that Plaintiff was restricted from lifting more than 20 pounds and from the repetitive use of his arms at any level.   *Id.* at 3.   The second finding is not at issue in this case as it appears the ALJ incorporated Dr. Porter's limitations into her RFC assessment on remand, and Plaintiff has not challenged this correction.

## A.   The ALJ's Medical Improvement Assessment.

As the Court previously noted, in order to show improvement and discontinuation of disability after November 25, 3003, the ALJ was required to find that Plaintiff's impairments had decreased in medical severity based on "'symptoms, signs and/or laboratory findings.'"   *Id.* at 3 (quoting 20 C.F.R. § 404.1594(b)(1)).   The ALJ was also required to find that Plaintiff's medical improvement was related to the ability to work.   *Id.* (citing 20 C.F.R. § 404.1594(c)).   The ALJ cited to a number of medical opinions and clinical findings to show that Plaintiff's impairments after November 25, 2003 were no longer severe.   Tr. at 593-95.   The ALJ also found that this evidence showed Plaintiff could adjust to other full time work.   *Id.* at 597.

Plaintiff argues that the ALJ erred because she incorrectly applied the five-step sequential evaluation process set forth in 20 C.F.R. § 416.920(a)(4)(i)-(iv) for

---

[2] The ALJ states that the Court affirmed the period of disability from the alleged onset date through November 25, 2003.   Tr. at 585.   That finding, however, was not challenged and not part of the Court's prior review.

determining whether a claimant has a disability rather than the eight-step sequential evaluation process set forth in 20 C.F.R. § 404.1594(f)(1)-(8) for determining whether a claimant continues to have a disability during periodic review or when finding a closed period of disability, depriving Plaintiff of the presumption of ongoing disability and shifting the burden of proof from the ALJ to show improvement to the claimant to show disability. Doc. 13 at 12-14. The ALJ did not make this error. Although she followed the five-step sequential process, she did not fail to address or assume the burden of proving the relevant considerations required on remand and included in the eight-step process: (1) whether Plaintiff's condition had improved as of November 25, 2003, and (2) whether this improvement was related to the ability to work. *See* 20 C.F.R. § 404.1594(f)(1)-(8).[3]   Plaintiff argues that the evidence shows that there was no improvement in his medical condition and disability should continue, but these arguments go to the ALJ's treatment of the evidence. They do not show that the ALJ failed to make the required evaluation.

As evidence that Plaintiff's condition had improved, the ALJ cited the treatment notes of Dr. Timothy W. Gibson, M.D. Tr. at 591 (citing Exhibit 1F); *see* Tr. at 195-217. These notes cover a treatment period from October 19, 2001, prior to Plaintiff's alleged onset of disability, until June 27, 2002. They extend about five months after Plaintiff had shoulder surgery on January 29, 2002 – the date he alleges the onset of disability – but end before he underwent a second shoulder surgery on September 10, 2002, and well before November 2003 when the ALJ found Plaintiff no longer disabled. *See id.* The ALJ did not refer to specific notes from Dr. Gibson to support improvement, and Plaintiff's subsequent surgery and the significant gap (nearly 18 months) between Dr. Gibson's evaluations and when the ALJ found Plaintiff no longer disabled makes these

---

[3] The eight-step process found in 20 C.F.R. § 404.1594(f)(1)-(8) effectively subsumes the five-step process at steps 1, 2, 6, 7, and 8. *Compare id.* at § 404.1594(f)(1),(2),& (6)-(8) *with* § 416.920(a)(4)(i)-(iv). Steps 3 and 4 state the relevant additional steps, which the ALJ applied in this case, for determining medical improvement. *Id.* at § 404.1594(f)(3) & (4). Step 5 (inapplicable here) is for determining when certain exceptions to a disability finding may apply. *Id.* at § 404.1594(f)(5).

notes of limited value as to that determination.

The ALJ cited the notes of Plaintiff's physical therapist on November 11, 2002, and January 15, 2003, indicating that he was making "excellent progress" toward a return to normal work activities.  Tr. at 591; *see* Tr. at 219, 227.  These notes also predate the ALJ's non-disability determination, but they occur after Plaintiff's second surgery and provide some evidence that Plaintiff's condition had begun to improve significantly several months prior to that determination.

The ALJ pointed to the February 24, 2003 exam and MRI evaluation by orthopedic surgeon Dr. Stephen J. Snyder, M.D., showing that Plaintiff's left upper extremity and neck were doing better following surgery, that he was experiencing "some" or "little" pain, that his subscap was intact, that he had no muscle atrophy, and that while he would not be able to return to his previous heavy work as a meat cutter, he should be retrained for a job that required no more than 20 pounds of lifting, no repetitive overhead work, and no pushing or pulling with his left arm.  Tr. at 591; *see* Tr. at 273-74.  The ALJ noted that Dr. Snyder opined that he expected Plaintiff to be permanent and stationary within a month's time.  Tr. at 274.  This provides further evidence that Plaintiff was experiencing significant improvement in the months prior to the ALJ's determination that he was no longer disabled.

As additional evidence of improvement, the ALJ noted that Plaintiff sought limited medical treatment for the remainder of 2003.  Tr. at 591; *see* Tr. at 306-08 (medical evaluations on July 31, 2003 and August 21, 2003 by orthopedic surgeon John A. Soscia, M.D., noting Plaintiff's previous surgeries and his complaints of mild to severe pain and recommending pain management but no further surgery).  Additionally, although Plaintiff saw a pain management specialist and underwent a series of trigger point injections, the ALJ noted that no more aggressive treatment was recommended, and Plaintiff only attended one physical therapy session.  Tr. at 592.[4]

---

[4] Likewise, the ALJ noted that when two more rounds of physical therapy were recommended in 2006 and 2008, Plaintiff attended less than 60% of his sessions and was discharged for non-compliance.  Tr. at 592 (citing Exhibits B16F, B27F & B28F).  The

1     The ALJ noted that Plaintiff began seeing Dr. Porter on October 7, 2003, upon
2  referral by Dr. Soscia, and that Dr. Porter opined that Plaintiff appeared to have cervical
3  spondylosis and was experiencing weakness of the cervical extensor muscles and
4  weakness and pain inhibition in his arms, but recommended only active therapy and
5  strength training.  Tr. at 593, *see* Tr. at 438.  Dr. Porter's physical exam showed Plaintiff
6  to have 80-pound grip strength in his left hand, 100-pound grip strength in his right hand,
7  2+ muscle stretch reflexes, full abduction and internal rotation bilaterally, with some pain
8  inhibition and restriction due to pain on his left side.  *Id.*  The ALJ noted that Dr. Porter
9  examined Plaintiff again on October 28, 2003, and found some diminished range of
10 motion but full strength of bilateral upper extremities and no neurological deficit, and
11 recommended only that Plaintiff continue taking his current pain relief medications.
12 Tr. at 593; *see* Tr. at 436.  Dr. Porter saw Plaintiff for a follow-up consultation on
13 August 26, 2004, at which time he noted Plaintiff's pain complaints and opined that "it
14 appears that the patient is getting worse each time I see him."  Tr. at 422.  The ALJ noted,
15 however, that Dr. Porter had not previously indicated any work-related restrictions, and
16 his August 2004 assessment contained only functional limitations as to Plaintiff's upper
17 extremities, including that he not do any repetitive motion of the upper extremities or any
18 overhead activities and not be required to lift more than 20 pounds.  Tr. at 593; *see* Tr. at
19 422.  The ALJ noted that these findings are not preclusive of other work as testified to by
20 the vocational expert.  Tr. at 593.
21     The ALJ also cited to the November 25, 2003 opinion of examining physician Dr.
22 Wood following a comprehensive physical exam and a detailed review of Plaintiff's
23 medical evidence, including x-rays, diagnostic tests, and surgical reports.  Tr. at 593
24 (citing Exhibit 5F); *see* Tr. at 309-323.  Dr. Wood found that Plaintiff had some bilateral
25 impingement of the shoulders and slightly reduced range of motion in the lumbar spine,
26
27
28

only discharge report the Court was able to locate in the record was a self-discharge on
November 13, 2008, after less than 60% attendance since July 2, 2008.  *See* Tr. at 1292.

but he concluded that Plaintiff was permanent and stationary, and he did not recommend further treatment beyond oral medication, physical therapy, and the two prior surgeries. Tr. at 593; *see* Tr. at 320.  Dr. Wood stated that he had considered Plaintiff's symptoms and clinical findings and would best describe his cervical spine pain as "intermittent slight to moderate," his right shoulder pain as "constant slight, increasing to slight to moderate with heavy lifting as well as repetitive work at or above shoulder level," and his left shoulder pain as "constant slight increasing to moderate with lifting, pushing, pulling of heavy objects as well as repetitive work at or above shoulder level."  Tr. at 321.  Based on his physical and diagnostic exams and Plaintiff's post-operative status, Dr. Wood opined that Plaintiff should prophylactically be precluded from heavy work, from lifting, pushing, and pulling heavy objects, and from doing repetitive work at or above shoulder level.  Tr. at 321.  The ALJ misstated that Dr. Wood opined that Plaintiff could do heavy work, and she disagreed with this assessment, but she stated that Dr. Wood's restrictions with regard to Plaintiff's non-exertional limitations were appropriate because he had thoroughly considered Plaintiff's subjective complaints, his characterization of Plaintiff's pain was not inconsistent with contemporaneous findings of treating physician Dr. Porter, and Plaintiff's treatment records, which show that he did not seek treatment again for almost 8 months, do not corroborate his reported pain.  Tr. at 594.

The Court finds that, taken as a whole, the ALJ gave sufficient reasons supported by substantial evidence in the record for finding that Plaintiff's impairments had sufficiently improved by at least November 25, 2003 to warrant a finding of non-disability at that time.  As noted above, both Dr. Porter and Dr. Wood considered Plaintiff's subjective complaints, conducted physical exams, and reviewed diagnostic tests, and both found only that Plaintiff could do less than heavy work with some specific, non-exertional limitations.  The ALJ relied on these opinions and the testimony of the vocational expert to find that Plaintiff could no longer do his past work but was not precluded from other full-time work.

Plaintiff argues that the ALJ failed to account for medical evidence showing that

his impairments worsened rather than improved.  Doc. 13 at 4-10.  The Court is required to consider both the evidence that supports the ALJ's decision and the evidence that detracts from it.  *Reddick*, 157 F.3d at 720.  Plaintiff cites to evidence that he continued to seek treatment for pain, stiffness, and limited range of motion in the left shoulder and to report bilateral shoulder and neck pain.  Doc. 13 at 5-6 (citing Tr. at 306-309, 316, 320).  He relies primarily on the examination and treatment notes of Drs. Porter and Wood and the underlying MRIs and diagnostic tests that informed their opinions.  *Id.*  The Court agrees that Plaintiff's subjective complaints together with the objective medical evidence show that Plaintiff continued to suffer from physical impairments of the shoulders, back, and neck.  This does not discount the pre-November 25, 2003 evidence the ALJ cited, however, showing functional improvement and only some or little pain.  Additionally, Dr. Wood's and Dr. Porter's interpretations of the subsequent evidence and subjective complaints support a finding that even if Plaintiff's condition had once again begun to worsen, he was not disabled at the time these doctors rendered their November 2003 and August 2004 opinions.

Plaintiff points to evidence from September 2004 forward showing that both his physical and mental impairments continued to worsen rather than improve.  Doc. 13 at 6-10.  This includes treatment notes from Dr. Porter and his associate, Dr. Bernstein, through at least January 2006, documenting Plaintiff's complaints of chronic neck, back, and shoulder pain up to a 9 out of 10, difficulty sleeping, headaches, depression, and ineffectiveness of physical therapy, medications, and trigger point injections to provide sustained relief (Tr. at 353-54, 360, 366, 371-72, 448, 1437, 1476-77), MRIs from January 2005, April 2006, and May 2008 showing multilevel spondylosis, minimal disc degeneration and bulging, and moderate bilateral neural foraminal stenosis (Tr. at 439, 488, 1095), an undated EMG showing moderate right carpel tunnel syndrome (Tr. at 441), and a consultative psychological evaluation by Dr. Elliot D. Salk in August 2006 showing mild dysthymic disorder and possible bipolar disorder, causing moderate limitations in Plaintiff's ability to carry out detailed instructions and moderate limitations

in his ability to respond appropriately to workplace pressures (Tr. at 502-506).  Plaintiff also points to a functional assessment completed by Dr. Bernstein in October 2010 opining that Plaintiff could sit less than 2 hours and stand less than 2 hours in a typical 8 hour workday, could lift and carry less than 15 pounds, and could only occasionally use his hands and feet.  Doc. 13 at 10; *see* Tr. at 1358.

As discussed more-fully below, the Court finds that the ALJ gave sufficient reasons for discounting Plaintiff's accounts of his own limitations except as they were confirmed in Dr. Porter's treatment notes in early 2005.  Plaintiff's MRIs, EMG, and Dr. Salk's psychological assessment do not compel a finding that the ALJ erred in discounting these findings as they evidenced only minimal to moderate physical and mental impairments.  The ALJ also reasonably discounted Dr. Bernstein's October 2010 functional assessment which was rendered more than two years after Dr. Bernstein's last evaluation and more than a year and a half after the period in consideration.  The ALJ correctly noted that all prior functional assessments, including that of Plaintiff's treating physician Dr. Porter and that of the non-examining physicians tasked with reviewing the relevant treatment notes and objective evidence, were consistent with the ability to do other work.  In summary, the ALJ gave sufficient reasons to support her finding that Plaintiff had improved with respect to Plaintiff's ability to work as of November 25, 2003.

**B.    Medical Source Opinion Evidence.**

Plaintiff argues that the ALJ improperly rejected the medical opinion evidence of Plaintiff's treating physicians, Drs. Porter and Bernstein, and erred in giving greater weight to the opinions of non-treating physicians, Drs. James Hopkins, M.D., and Diane Keller.  Doc. 13 at 14-19.

The Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians.  *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Generally, an ALJ should give greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than one

of a non-examining physician.  *See Andrews v. Shalala*, 53 F.3d 1035, 1040-41 (9th Cir. 1995); 20 C.F.R. § 416.927(d)(1), (2).  A treating physician's opinion is not necessarily conclusive of a physical impairment or the ultimate issue of disability, however, and an ALJ need not accept such an opinion if it is brief, conclusory, and unsupported by clinical findings.  *See Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002) (citing *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)).

Where the treating physician's opinion is credible and uncontroverted, the ALJ must provide "clear and convincing" reasons for rejecting it.  *Id.*; *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1298-99 (9th Cir. 1999).  Similarly, the ALJ cannot reject a treating physician's ultimate conclusions without clear and convincing reasons.  *Lester*, 81 F.3d at 830.

Even if a treating physician's opinion is controverted by a non-treating physician's opinion, the ALJ must still make findings setting forth "'specific, legitimate reasons' supported by substantial evidence in the record" for rejecting it.  *Id.* (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)); *see Thomas*, 278 F.3d at 957.  "The ALJ can 'meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Thomas*, 278 F.3d at 957 (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  One specific, legitimate reason is where the treating physician's opinion is premised on the claimant's subjective complaints, which the ALJ has already properly discounted.  *See Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989).  Where the treating physician's opinion is controverted by a non-treating physician's opinion based on independent clinical findings, the non-treating physician's opinion itself may be substantial evidence.  *See Thomas*, 278 F.3d at 957 (citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999); *Andrews*, 53 F.3d 1041 (citing *Magallanes*, 881 F.2d at 751).  "'When there is conflicting medical evidence, the [ALJ] must determine credibility and resolve the conflict.'"  *Thomas*, 278 F.3d at 957 (quoting *Matney*, 981 F.2d at 1019); *see Andrews*, 53 F.3d 1041.

1         **1.     Dr. Porter.**

2         The ALJ gave reduced weight to Dr. Porter's treatment notes because she found

3  them to be overly dependent on Plaintiff's subjective complaints and not supported by

4  objective medical evidence.  Tr. at 594.  The ALJ noted that the physical exams on or

5  around November 23, 2003 showed that Plaintiff had experienced medical improvement

6  and that subsequent objective findings showed a lack of spinal cord compression,

7  stenosis, and nerve root irritation and did not support Plaintiff's alleged inability to sit,

8  stand, and walk for extended periods or his alleged upper extremity limitations.  *Id.*, Tr. at

9  592; *see* Tr. 488-89 (April 7, 2006 MRI results showing unremarkable to moderate disc

10 bulging and narrowing and no evidence of significant central or foraminal stenosis or

11 facet joint arthropathy); 492 (April 25, 2006 neurosurgical consultation by Dr. Jonathan

12 S. Hott, M.D., opining that Plaintiff's complaints of chronic neck pain and bilateral upper

13 extremity numbness could not be correlated with MRI findings showing no evidence of

14 cord compression and only mild to moderate foraminal narrowing); Tr. at 1288 (May 22,

15 2008 MRI showing minimal to moderate disk bulging and moderate bilateral foraminal

16 and central canal stenosis).  The ALJ also found that Plaintiff's consistent lack of muscle

17 atrophy (*see, e.g.*, Tr. at 449, 1405) did not support his alleged symptoms (Tr. at 591,

18 594, 595).  These findings provide some evidence that Dr. Porter's notes of Plaintiff's

19 subjective complaints were not supported by the medical evidence.

20        Plaintiff argues on the basis of *Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir.

21 1998), and *Ryan v. Comm'r of Social Security*, 528 F.3d 1194, 1199-1200 (9th Cir.

22 2008), that it is improper for an ALJ to discredit a treating physician's consideration of a

23 claimant's subjective complaints because they are an important part of diagnosis and

24 treatment.  Doc. 13 at 17.  In *Reddick*, the Ninth Circuit found that the rejection of two

25 treating physicians' opinions because they were based on subjective complaints was ill-

26 suited to a case involving chronic fatigue syndrome ("CFS") because "the presence of

27 persistent fatigue is necessarily self-reported."  157 F.3d at 726.  This is not the case with

28 Plaintiff's reported symptoms such as numbness and postural restrictions that can be

demonstrated through objective medical evidence, including MRIs and physical exams. Here, however, Dr. Porter opined on January 20, 2005 that Plaintiff's subjective complaints, which included continuous and severe (6 to 9 out of 10) cervical, mid back, and shoulder pain, were consistent with objective findings.  Tr. at 371-72.  He also opined that the issue of returning to work would best be addressed after trying facet blocks and "once the patient has reached maximum medical benefit."  Tr. at 372.

In *Ryan*, the Ninth Circuit affirmed that "an ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations."  528 F.3d at 1199-2000 (citing *Edlund v. Massanari,* 253 F.3d 1152, 1159 (9th Cir.2001)).  Here, Dr. Porter included his own findings based on physical exams and MRIs and opined that the objective medical evidence was consistent with Plaintiff's complaints.  Although the ALJ gave separate reasons for discounting Plaintiff's subjective complaints, she did not specifically address or discount Dr. Porter's January 2005 opinion.  Absent controverting objective or medical opinion evidence, it was error for the ALJ to reject Plaintiff's subjective complaints where his treating physician found those complaints credible and supported by objective medical evidence.

### 2.     Dr. Bernstein.

The ALJ noted that Dr. Bernstein, a partner of Dr. Porter, saw Plaintiff on several occasions in 2004 and 2005, one time in 2006, and three times in late 2008.  Tr. at 595 (citing Exhibit 30F).  Dr. Bernstein subsequently completed a medical assessment of Plaintiff's ability to do work-related activities on October 20, 2010.  Tr. at 1358-59.  The ALJ found this assessment overly restrictive and unsupported by Dr. Bernstein's treatment notes.  Tr. at 595.  She also gave this assessment diminished weight because there was no record that Dr. Bernstein had treated Plaintiff after 2008, and it was not clear as to which time period the assigned limitations applied.  *Id.*

Plaintiff argues that the ALJ failed to explain why she found Dr. Bernstein's

1   assessment unsupported by his treatment notes.  Doc. 20 at 9.  Plaintiff also argues that it

2   was error for the ALJ to discredit the 2010 assessment because opinions of treating

3   physicians rendered after the relevant treatment period and after the expiration of a

4   claimant's insured status are still entitled to significant weight.  *Id.* at 9-10.

5        The Court agrees that the ALJ did not explain why she found Dr. Bernstein's

6   assessment unsupported by his treatment notes.  The Court does not agree, however, that

7   the ALJ was required to credit Dr. Bernstein's October 2010 assessment despite a lack of

8   clarity as to when its limitations applied.  Plaintiff cites to *Smith v. Bowen*, 849 F.2d

9   1222, 1225-25 (9th Cir. 1988), for the proposition that medical opinions should not be

10  disregarded solely because they are rendered retrospectively.  849 F.2d at 1225-25.  Here,

11  however, the ALJ discounted Dr. Bernstein's assessment not because it was rendered

12  retrospectively, but because it did not indicate whether it applied to 2010 or to the prior

13  treatment period.  *Poe v. Harris*, 664 F.2d 721, 723, n. 2 (8th Cir. 1981), is inapposite

14  because *Poe* credited the opinion of an examining physician who rendered his report after

15  the insured's period of disability had ended but expressly stated that the claimant was

16  disabled during the relevant period.  *Boyd v. Heckler*, 704 F.2d 1207, 2011 (11th Cir.

17  1983), to which Plaintiff cites for the proposition that subsequent medical exams may be

18  used to show how a claimant's limitations affected him at an earlier date, also does not

19  help Plaintiff.  Dr. Bernstein's 2010 assessment, written in the present-tense, does not

20  state that his findings are retroactive to an earlier date and does not state whether it was

21  based on current or prior exams.  The ALJ also discounted Dr. Bernstein's assessment

22  because it stated that Plaintiff would benefit from a formal functional capacity evaluation

23  and the ALJ found this inconsistent with crediting the functional limitations provided in

24  Dr. Bernstein's own report.  Tr. at 595.  On the whole, the ALJ gave sufficient reasons

25  for discrediting the functional limitations in Dr. Bernstein's 2010 assessment.[5]

26  _____

27        [5] Dr. Bernstein provided a similar assessment on November 18, 2011.  Tr. at 560-
    61.  He checked that this assessment was based on objective clinical diagnostic findings,
28  but also did not indicate when these findings were made or opine that they applied to an
    earlier period.  *Id.*

### 3.        Plaintiff's Non-Examining Physicians.

The ALJ stated that she gave great weight to the December 2004 residual functional capacity assessment of state agency physician Dr. James Hopkins, M.D.  Tr. at 595; *see* Tr. at 343-350.  This assessment indicated that Plaintiff could occasionally lift and carry up to 20 pounds, frequently lift or carry 10 pounds, stand and sit up to 6 hours each in an 8-hour workday, had unlimited ability to push and pull within the described weight limits, and was limited to occasional overhead activities.  Tr. at 344-46.  The ALJ found this opinion consistent with the August 2004 assessment of state agency physician Diane Keller, M.D. (*see* Tr. at 335-342) and further affirmed by the November 2008 assessment of state agency physician Dr. M. Susman, which noted that numerous examinations by Plaintiff's treating physicians at Desert Pain/Rehab showed normal upper and lower extremity strength and full range of motion in all joints, including the surgically corrected left shoulder.  Tr. at 595; *see* Tr. at 1214-1221.  The ALJ also stated that Dr. Hopkins gave due consideration to Plaintiff's subjective complaints and impairments when making his assessment.  Tr. at 595.

Plaintiff argues, and the Court agrees, that the ALJ did not point to any evidence to show that Dr. Hopkins gave due consideration to Plaintiff's subjective complaints and impairments.  Doc. 13 at 19.  The assessment itself states "see E.W.S." as support for Dr. Hopkins' conclusions (*see* Tr. at 344-48), but the ALJ did not point to that evidence anywhere in the record.  The ALJ correctly noted that Dr. Hopkins assessment was consistent with the earlier assessment of Dr. Keller who had reviewed a number of MRIs and medical records to date (*see* Tr. at 336-37) and with the November 2008 assessment of Dr. Susman who reviewed Plaintiff's more recent imaging studies, including the May 2008 MRI of his cervical spine.  *See* Tr. at 1215-1220.  The consistency of Dr. Hopkins' opinion with these findings is a legitimate reason for ascribing weight to his medical opinion.  *See* 20 C.F.R. § 404.1527(d)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give that opinion.").

The ALJ did not give sufficient reasons, however, for crediting Dr. Hopkins and

the other non-examining physicians' opinions where they conflicted with the assessments of Plaintiff's examining and treating physicians.  Even discrediting the 2010 functional assessment by Dr. Bernstein for the reasons stated above, the ALJ's findings that Plaintiff had unlimited ability to push and pull and was limited to occasional overhead reaching of the left upper extremity (Tr. at 590) are clearly inconsistent with the medical opinions the ALJ relied on to show improvement, including Dr. Snyder's opinion that Plaintiff should do no pushing or pulling with his left arm and Dr. Porter's opinion that he would not be able to do any overhead activities.  The ALJ did not explain why she failed to incorporate these limitations into her RFC assessment or show that they were properly refuted by the non-examining doctors' contrary assessments.

Despite this error, when the ALJ questioned the vocational expert to find that Plaintiff would be capable of other work, she included the restrictions that he would be unable to perform any repetitive motions or overhead activity whatsoever with his upper extremities.  Tr. at 597; *see* Tr. at 1595.  Thus, the actual RFC as posed to the vocational expert did not impermissibly favor the findings of Plaintiff's non-examining physicians over the credited opinions of his treating and examining physicians.

### C.   Plaintiff's Subjective Complaints.

Plaintiff testified at the April 4, 2011 hearing that he has arthritis in his back and neck, degenerative disc disease, a gene mutation, CTS in both arms and hands, a little bit of lower back pain, neck, mid back, and shoulder pain.  Tr. at 1575.  He stated that his CTS and back, neck, and shoulder pain have worsened since 2003.  Tr. at 1575-76.  He testified that he can only stand for 15 minutes at a time, walk up to 50 yards, sit for 30 minutes at a time, and lift 8-10 pounds, and that his daily routine consists of napping, watching T.V., and making and eating simple meals of cereal or sandwiches.  Tr. at 1582, 1586.  He testified that this has been his pattern for three to four years.  Tr. at 1590.

The previous ALJ discounted Plaintiff's alleged limitations, and the Court determined that the evidence the ALJ relied on, including Plaintiff's reported activities,[6]

---

[6] These included "reading, watching T.V., running errands, playing video games,

his lack of muscle atrophy, and the lack of supporting medical evidence, provided clear and convincing reasons for finding his alleged functional limitations not credible. *Lemberg v. Astrue*, No. 2:08-cv-01079-FJM, at 4-6.

The ALJ incorporated this finding and made additional findings on remand that add to the overall evidence supporting her conclusion that Plaintiff exaggerated the intensity, consistency, and limiting effects of his impairments.  Tr. at 594-95.  The ALJ noted that Dr. Salk found Plaintiff to have extreme item endorsement resulting in an invalid MMPI.  Tr. at 594; *see* Tr. at 502.  This finding does not contribute significantly to an adverse-credibility assessment because, as Plaintiff points out (*see* Doc. 13 at 20), Dr. Salk also opined that Plaintiff put forth a good effort, provided consistent answers on other tests, and his scores were likely an accurate reflection of his [mental] abilities.  Tr. at 500-502.  The ALJ noted that the opinions of other medical consultants and reviewers found Plaintiff to be only partially credible.  Tr. at 595 (citing Exhibits 8F & 9F); *see* Tr. at 986, 997.  This includes the January 2008 opinion of Maureen Polsby, M.D., who reviewed Plaintiff's allegations of bilateral carpal tunnel syndrome ("CTS") and noted that there was virtually no mention of CTS in Plaintiff's medical records, he did not identify a treating source for CTS, and there was no mention of it in the treating notes of his primary care physician of the past four years.  Tr. at 997.  Dr. Polsby also found Plaintiff less than credible because he reported that he could only do minimal activities, could no longer attend church, and drove only when absolutely necessary, but his mental health records stated that he attends church regularly, drives the church bus, and provides childcare for neighbors.  *Id.*; *see* Tr. 592.  The ALJ also cited to the November 2008 opinion of reviewing physician Dr. Susman.  Tr. at 595 (citing Exhibit 18F).  Dr. Susman stated that Plaintiff's claims that he could only walk 30 yards at a time and could only stand or sit 10-15 minutes at a time were out of proportion with his imaging and physical examination results and were indicative of "symptoms magnification."  Tr. 1219.  As

---

swimming once a month, cooking a few times a week, tossing a softball, doing laundry, playing board games and cards, refinishing furniture, and playing with a radio-controlled truck."  *Lemberg v. Astrue*, No. 2:08-cv-01079-FJM, at 4 (March 12, 2010, Doc. 20).

1    previously noted, the ALJ also found Plaintiff's lack of muscle atrophy inconsistent with

2    his alleged inactivity.

3        Plaintiff argues that the ALJ erred in discounting his symptom complaints because

4    once she determined that his impairments could produce his alleged symptoms, it was

5    error for her to discount his subjective complaints simply because they could not be fully

6    confirmed by objective medical evidence.   Doc. 13 at 20-21 (citing cases); *see, e.g,.*

7    *Smolen v. Chater*, 80 F. 3d 1273, 1282 (9th Cir. 1996) (requiring "only that the causal

8    relationship [between objective evidence and subjective complaints] be a reasonable

9    inference, not a medically proven phenomenon."). The ALJ did not make this error. As

10   previously discussed, the ALJ pointed to objective medical evidence such as medical

11   imaging and physical exams that reviewing doctors opined did not fully corroborate

12   Plaintiff's claims of chronic pain, numbness, and limited ability to walk, sit and stand.

13   "Although lack of medical evidence cannot form the sole basis for discounting pain

14   testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v.*

15   *Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). The ALJ then made additional findings to

16   show that Plaintiff lacked credibility and incorporated the reasons that the Court

17   previously found sufficient to support an adverse-credibility finding. The ALJ was not

18   instructed to reconsider Plaintiff's credibility on remand, and she reasonably relied on the

19   Court's prior determination on that issue together with other evidence such as Plaintiff's

20   lack of muscle atrophy, his strength and range of motion in physical exams, and other

21   adverse credibility findings in the record to determine that Plaintiff's testimony of

22   worsening and incapacitating pain since 2003 lacked credibility. The Court finds these

23   reasons sufficiently clear and convincing to support the ALJ's adverse-credibility

24   determination.[7]

25

26       [7] Plaintiff testified at the April 2011 hearing that the symptoms and pattern of
     activities he identified had been present for 3-4 years. Thus, his testimony purportedly
27   covers a period from roughly early 2007 to 2008 to early 2011. The Court notes that this
     period post-dates the evidence of physical activities that it previously found gave support
28   to the ALJ's adverse-credibility finding.   The record appears to lack any evidence of
     physical activities after 2008 that would clearly conflict with Plaintiff's 2011 testimony.
     The finding that Plaintiff was less than credible in his earlier testimony is nonetheless

1              **D.     Kimberly Lemberg's Testimony.**

2          Plaintiff's wife, Kimberly Lemberg, completed a third-party functional report on

3    August 16, 2008, in which she indicated that Plaintiff was in constant pain, that it takes

4    him longer than usual to dress himself, that she has to help him bathe at times, and that

5    she keeps his hair short because it hurts him to lift his arms to care for it.  Tr. at 803.  She

6    indicated that he makes breakfast and lunch for himself daily, but he cannot barbeque and

7    does not help in the kitchen or do chores or yard work because he is in constant pain and

8    cannot reach or bend.  Tr. at 804-805.  She indicated that he goes outside the house daily,

9    can go out on his own, and can drive and ride in a car.  Tr. at 805.  She estimated that he

10   can walk one block before needing to rest for 5-10 minutes.  Tr. at 807.  She indicated

11   that he mostly sleeps and watches T.V.  Tr. at 806-807.

12         The ALJ gave little weight to Mrs. Lemberg's testimony because she found it to

13   be inconsistent with the objective medical evidence of record.  Tr. at 595.  She also

14   reasoned that Mrs. Lemberg was likely biased because of her close relationship to

15   Plaintiff.  Tr. at 596.  Further, she stated that even if she afforded full credibility to Mrs.

16   Lemberg's statements, she was not persuaded that Plaintiff would be incapable of all

17   gainful employment.  *Id.*

18         "If the ALJ wishes to discount the testimony of [a] lay witness[], [s]he must give

19   reasons that are germane to each witness."  *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir.

20   1993).  Here, the ALJ's speculation of likely bias was not a valid reason for discrediting

21   Mrs. Lemberg's testimony.  Discrediting testimony merely because it came from a close

22   personal relation without any other evidence of bias would defeat the proposition that

23   "friends and family members in a position to observe a claimant's symptoms and daily

24   activities are competent to testify as to [his] condition."  *Dodrill v. Shalala*, 12 F.3d 915,

25   918-19 (9th Cir. 1993); *see also* 20 C.F.R. § 404.1513(e)(2); SSR 06-03p, 2006 WL

26   2329939, at *2 (Aug. 9, 2006) ("information from such "other sources" may be based on

27

28   relevant to the assessment of Plaintiff's credibility overall.  Additionally, the relevant
     period for purposes of this review extends from November 25, 2003 through March 31,
     2009 and thus required the ALJ to consider evidence from the entire period.

special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.").

It is a closer call as to whether citing to the objective medical evidence is a sufficient reason for discounting Mrs. Lemberg's testimony. The Court will infer that in discrediting Mrs. Lemberg's testimony "because of its inconsistency with the objective medical evidence of record" the ALJ was referring to the same objective medical evidence including MRI results and physical exams that she used, in part, to discredit Plaintiff's subjective complaints. The ALJ found that the MRIs cast some doubt on Plaintiff's professed inability to sit, stand, and walk for extended periods, and the physical exams did not fully support Plaintiff's alleged limitations in movement. A lack of full medical corroboration is not a sufficient reason, however, to discount Mrs. Lemberg's personal observation of Plaintiff's pain and physical limitations just as it would not be a sufficient reason for rejecting Plaintiff's own testimony of such symptoms without otherwise showing a lack of credibility. While it may be that evidence of Plaintiff's activities as previously noted by the Court conflict in some ways with Mrs. Lemberg's description of Plaintiff's limitations, the ALJ did not cite to this evidence directly or otherwise show that any of Plaintiff's actions at or around the time of Mrs. Lemberg's statements made her testimony less than credible.

The Commissioner argues on the basis of *Valentine v. Comm'r of the Soc. Sec. Admin.*, 574 F. 3d 684, 694 (9th Cir. 2009), that where the ALJ has provided valid reasons for discounting a claimant's own testimony, she may discount similar lay witness statements. Doc. 16 at 22. In *Valentine*, however, the ALJ expressly stated that she rejected the testimony of the claimant's wife for the same reasons she had discounted his own testimony, and she had pointed to specific activities showing that the claimant's testimony about his own limitations was exaggerated. 574 F.3d at 693-94. Here, the ALJ relied, in part, on the Court's prior finding that Plaintiff's own testimony about his limitations was not consistent with other evidence of his activities, but she did not point to this evidence with respect to Mrs. Lemberg's statements. Moreover, Mrs. Lemberg's

1   August 2008 statements pertain to a later time period than was initially at issue.   Her
2   statements are also consistent with Plaintiff's own testimony of his limited activities from
3   at least 2008 forward which, though Plaintiff was found to lack credibility, were not
4   clearly contradicted by evidence of any more strenuous activities at that time.   The Court
5   concludes that the ALJ failed to provide sufficient germane reasons for discrediting the
6   lay witness testimony of Mrs. Lemberg.

7        The ALJ also did not explain why she found Mrs. Lemberg's August 2008
8   testimony regarding Plaintiff's limitations consistent with an ability to do full time work.
9   Rather, she summarily rejected this testimony and did not appear to factor it into her
10  RFC, into Plaintiff's own credibility assessment, or into any of the questions she posed to
11  the vocational expert.   On this record, the Court cannot conclude that the ALJ's finding
12  that Plaintiff remained capable of full time work from November 25, 2003 through the
13  full period of his insured status was free from legal error and supported by substantial
14  evidence.

15  **IV.     Remedy.**

16       The decision to remand for further development of the record or for an award
17  benefits is within the discretion of the Court.   42 U.S.C. § 405(g); *see Harman v. Apfel*,
18  211 F.3d 1172, 1173-74 (9th Cir. 2000).   This Circuit has held, however, that an action
19  should be remanded for an award of benefits where three conditions are met:   the ALJ has
20  failed to provide legally sufficient reasons for rejecting evidence, no outstanding issue
21  remains that must be resolved before a determination of disability can be made, and it is
22  clear from the record that the ALJ would be required to find the claimant disabled were
23  the rejected evidence credited as true.

24       The Court has found that the ALJ gave sufficient reasons supported by substantial
25  evidence in the record to show that Plaintiff had improved with respect to his ability to do
26  work as of November 25, 2003.   The Court has also found that the ALJ failed to give
27  legally sufficient reasons for discrediting the opinion of Plaintiff's treating physician Dr.
28  Porter on January 2005 that Plaintiff's subjective complaints were consistent with

objective findings, and for discrediting the August 2008 lay testimony of Mrs. Lemberg regarding the persistence and severity of Plaintiff's limitations.  It is not clear, however, that the ALJ, if taking this evidence as true, would be required to find Plaintiff disabled, and, if so, what the relevant period of disability would be.  The credit-as-true rule applied in *Varney* and its progeny is "specifically limited to cases 'where there are no outstanding issues that must be resolved before a proper disability determination can be made[.]'" *Vasquez v. Astrue*, 572 F.3d 586, 593 (9th Cir. 2009) (quoting *Varney*, 859 F.2d at 1401). Because the Court finds that outstanding issues remain even if the discredited testimony is credited as true, the Court will remand for further proceedings consistent with this order.

**IT IS ORDERED:**

1.      Defendant's decision denying benefits is **reversed**.

2.      The case is **remanded** for further proceedings consistent with this order.

3.      The Clerk is directed to enter judgment in this matter.

Dated this 20th day of August, 2013.

David G. Campbell
United States District Judge